# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| Douglas R. Vaughn,<br>    Plaintiff,<br><br>v.<br><br>Nurse Terry, et al.,<br>    Defendants. | )<br>)<br>)<br>)   1:19cv565 (LMB/IDD)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed by defendants Mikhail Chelpon ("Chelpon" or "defendant Chelpon"), Alvin Garcia ("Garcia" or "defendant Garcia"), and Diane Anthony ("Anthony" or "defendant Anthony") (collectively "defendants") in this civil rights action filed by Virginia state prisoner Douglas Vaughn ("plaintiff"). [Dkt. No. 45]. The operative complaint alleges that defendants, each of whom is a registered nurse employed at Loudoun County Adult Detention Center ("LCADC"), were deliberately indifferent to plaintiff's serious medical needs—diabetes and musculoskeletal pain of the neck, shoulder, and back. [Dkt. No. 31]. Supported by medical records and affidavits, defendants argue that they offered plaintiff constitutionally appropriate medical attention and are thus entitled to judgment in their favor. [Dkt. No. 46]. Plaintiff has filed two oppositions to defendants' motion [Dkt. Nos. 52, 57], and defendants have replied [Dkt. No. 56]. This matter is therefore fully briefed and ready for resolution. For the reasons explained below, defendants' Motion for Summary Judgment will be granted and this civil action will be closed even though one named defendant has not yet been successfully served because it is clear from this record that the same evidence and reasoning which supports granting summary judgment to the served defendants would apply to her as well.

I

The summary judgment record establishes the following uncontested facts.[1] Plaintiff was housed at LCADC between January 28 and February 11, 2019. Defendants, each of whom is a registered nurse, worked at LCADC during that period. [Dkt. No. 46-2] at 2; [Dkt. No. 46-3] at 2; [Dkt. No. 46-4] at 2. Defendant Anthony served as the Health Services Administrator and was responsible for ensuring LCADC was adequately staffed by medical professionals. [Dkt. No. 46-2] at 2. Anthony was not licensed to write prescriptions or diagnose illnesses in this role and did not provide healthcare to inmates. Id. Defendants Chelpon and Garcia, meanwhile, served in more traditional caregiving roles and were responsible for providing care to inmates such as plaintiff. [Dkt. No. 46-3] at 2; [Dkt. No. 46-4] at 2.

Upon his January 28, 2019 intake at LCADC, plaintiff indicated that he suffered from hypertension, diabetes, and hyperlipidemia and that he felt pain in his shoulder, neck, and back, which he stated was the result of an injury he had suffered the previous October. [Dkt. No. 46-1] at 2-7. The following day, LCADC healthcare providers saw plaintiff at least three times to check his blood sugar levels. Id. at 10. Separately, a registered nurse named Nenita Gonzalez ("Gonzalez") saw plaintiff in response to a claim that he could not move and was suffering

---

[1] None of the four complaints plaintiff has filed in this action are verified [see Dkt. Nos. 1, 3, 29, 31], and the allegations in those complaints therefore may not be considered as evidence at the summary judgment stage. See, e.g., Huff v. Outlaw, No. 9:09-cv-520, 2010 WL 1433470, at *2 (D.S.C. Apr. 8, 2010) ("[T]he law is clear that a plaintiff cannot rely on an unverified complaint in opposing a motion for summary judgment."). Nor has plaintiff submitted any documentary exhibits in support of his position. Although plaintiff has abided by Local Rule 56(B) by identifying the statements offered by defendants with which he disagrees [see Dkt. No. 52], he has not "cit[ed] the parts of the record relied on to support the facts alleged to be in dispute." Local Civ. R. 56(B). Accordingly, the facts set out in this section are only based on evidence defendants have submitted in support of their motion.

2

severe back pain. Id. at 48. In response to plaintiff's complaints, Gonzalez provided plaintiff with 400 milligrams of ibuprofen and a warm compress. Id.

On January 30, 2019, plaintiff continued to complain of back pain. In response to his complaint, Gonzalez ordered plaintiff an increased dose of ibuprofen and collected a urine sample from plaintiff. Id. at 21. Plaintiff concedes in his complaint that he was provided a wheelchair on that day by Nurse Terri Delateur, the unserved defendant. [Dkt. No. 31] at 4.

On February 1, 2019, defendant Garcia directed a deputy to escort plaintiff to LCADC's medical facilities for a blood sugar check because plaintiff had reportedly "heard a popping sound from them middle of his back" and was struggling to walk. [Dkt. No. 46-1] at 22. Plaintiff was successfully transferred from his bed to a wheelchair for the blood sugar test and was provided ibuprofen on two occasions that day. Id. Defendant Garcia later monitored plaintiff from a camera in his cell and reported that plaintiff had fallen asleep and was frequently changing positions in his bed. Id. Garcia checked plaintiff's camera again later that day and found that plaintiff was "sitting in the middle of the bed leaning forward with right leg crossed on the top of left leg" expressing "no facial grimaces." Id. at 24.

On February 2, 2019, at roughly 8:30 a.m., defendant Chelpon visited plaintiff at his cell. [Dkt. No. 46-3] at 3. Plaintiff rose from his bed without difficulty but dragged his feet while walking to the cell door. Id. Although Chelpon concluded that plaintiff's "outward display of pain was not consistent with" "a real injury," Chelpon nevertheless provided plaintiff ibuprofen and ordered additional monitoring. Id. Later that day, plaintiff "complained of 10/10 generalized pain everywhere from lying on his cot 12 hours a day." Id. Chelpon advised plaintiff to "stay mobile" and provided him with additional ibuprofen. Id. Chelpon and Garcia each checked plaintiff's blood sugar at different times throughout that day. [Dkt. No. 46-1] at 15.

3

On February 3, 2019, plaintiff visited LCADC's medical department where, while attempting to sit on the exam table, he missed a step and fell to the ground. Id. at 31. Plaintiff did not hit his head or neck and was able to stand with assistance and later walk under his own power to his cell. Id. Before plaintiff returned to his cell, defendant Chelpon assessed plaintiff's right shoulder—onto which plaintiff had fallen—and determined that its range of motion had not been impacted. [Dkt. No. 46-3] at 5. Chelpon provided plaintiff an ice pack and instructed him to return to medical if he remained in pain. Id.

On February 4, 2019, Chelpon and Garcia collectively checked plaintiff's blood sugar levels on four occasions: at 6:30 a.m., 10:51 a.m., 4:47 p.m., and 10:40 p.m. [Dkt. No. 46-1] at 15. Plaintiff's blood glucose level was 286 at the 10:40 p.m. check, and Chelpon accordingly provided plaintiff with insulin, which reduced plaintiff's blood sugar within two hours. Id.; [Dkt. No. 46-3] at 5.

On February 5, 2019, plaintiff was seen by LCADC medical staff on five occasions. The first visit occurred at 12:27 a.m., when plaintiff complained of lightheadedness. [Dkt. No. 46-1] at 36. Defendant Chelpon tested plaintiff's blood sugar and, finding that it was 88.2, provided plaintiff two graham crackers. Id. Chelpon checked plaintiff's blood sugar again at 5:40 a.m. Id. at 15.

On February 6, 2019, Garcia checked plaintiff's blood glucose levels on two occasions: at 12:15 p.m. and 4:45 p.m. Id. Later that day, a non-party nurse checked plaintiff's blood sugar once more and provided plaintiff eight units of insulin. Id.

On February 7, 2019, defendants Garcia and Chelpon each checked plaintiff's blood sugar levels twice. Id. at 14-15. Additionally, because of plaintiff's February 3 fall, at 4:41 p.m., Garcia denied plaintiff's request to be placed in general population. Id. at 42. Garcia

4

recorded a note stating that, although plaintiff walked steadily at their encounter, he recommended plaintiff stay in an observation cell for additional monitoring. Id.

On February 8, 2019, LCADC staff checked plaintiff's blood glucose four times; Chelpon conducted the first check, Garcia conducted the next two, and a non-party nurse conducted the fourth. Id. at 14. During one encounter, Chelpon provided plaintiff a tube of glucose in response to plaintiff's complaint that he felt hypoglycemic. Id. at 42.

On February 9, 2019, unserved defendant, nurse Terri Delateur ("Nurse Terry" or "Delateur") checked plaintiff's blood sugar on four occasions: at 8:43 a.m., 10:40 a.m., 3:32 p.m., and 5:00 p.m. Id. She administered insulin after the third test because plaintiff's blood sugar level had risen to 246. Id.

On February 10, 2019, LCADC staff checked plaintiff's blood glucose levels on four occasions; a non-party nurse conducted a check at 6:40 a.m., after which Delateur conducted two additional checks. Id. at 13-14. Delateur provided plaintiff eight units of insulin after his blood glucose levels read 334. Id. Finally, at 10:47 p.m., another non-party nurse checked plaintiff's blood sugar and provided him with another eight units of insulin. Id. at 13.

On February 12, 2019, a staff nurse noted that plaintiff "had no complaints of pain" and accordingly cleared him for transfer to general population. Id. at 44.

## II

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of

5

law, the nonmoving party "must show that there is a genuine dispute of material fact for trial ... by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Inv'rs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### III

Because the complaint alleges that deputies transported plaintiff to LCADC after arresting him, it appears likely that plaintiff was a pretrial detainee at the time in question and that the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment, governs plaintiff's claims. See Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001) (stating that "the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, mandates the provision of medical care" to pretrial detainees "who require it"). As a practical matter, the analysis of claims related to medical care in prisons and jails is identical, whether the claim arises under the Eighth or Fourteenth Amendment. See Belcher v. Oliver, 898 F.2d 32, 34 (4th Cir. 1990) ("The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee.").

Accordingly, to prevail as to a claim based on the medical care he received, an incarcerated plaintiff must demonstrate that he suffered an injury that is both apparent and serious. Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). He must then demonstrate deliberate indifference toward that injury on the part of the defendants. "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Id. at 695. To meet this burden, a plaintiff must show that a defendant "had actual knowledge of the prisoner's

serious medical needs and the related risks, but nevertheless disregarded them." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018) (citing Scinto v. Stansberry, 841 F.3d 219, 225-26 (4th Cir. 2016)). Significantly, a prisoner's disagreement with medical personnel over the course of his treatment is inadequate to state a constitutional cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); see also United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011).

The complaint alleges that plaintiff suffered from two health conditions while incarcerated at LCADC: diabetes and a musculoskeletal injury of the neck, shoulders, and back. [Dkt. No. 31]. As an initial matter, it appears that plaintiff has forfeited his claim regarding the treatment he received for diabetes. In his opposition to the Motion for Summary Judgment, plaintiff states that he "wasn't that concerned about [his] diabetic needs." [Dkt. No. 52] at 1. He also states that "was seen for diabetic coverage but [] was more concerned about [his] cronic [sic] pain." Id. at 3. Finally, in a second opposition to the motion, plaintiff concedes that he "received treatment for [his] diabetes." [Dkt. No. 57] at 2. Cf. Calloway v. Wolfe, No. GJH-16-3595, 2018 WL 1388448, at *4 (D. Md. Mar. 16, 2018) (deeming claim abandoned where plaintiff asserted in amended complaint that medical care was improper but stated in later filing that he "[was] not disputing the medical care").

Even if plaintiff has not abandoned his claim concerning treatment of his diabetes, the record makes clear that defendants are entitled to judgment with respect to the treatment plaintiff received for this condition. Indeed, defendants have submitted extensive evidence which shows that defendants Chelpon, Garcia, Delateur, and nonparty medical professionals checked plaintiff's blood sugar multiple times per day every day plaintiff remained at LCADC. When plaintiff's blood sugar was deemed too low, plaintiff was provided a snack or glucose. When the level was deemed too high, plaintiff was provided insulin. No rational jury could consider this evidence and conclude that defendants acted with deliberate indifference to plaintiff's diabetic

7

needs. Therefore, judgment will be entered in all defendants' favor as to this claim. Cf. Jamison v. Harlow, No. 5:20-cv-80, 2020 WL 6797367, at *5 (N.D. W. Va. Nov. 6, 2020) (granting summary judgment as to deliberate indifference claim where evidence showed defendants "consistently and repeatedly evaluated, monitored, reevaluated, and treated" plaintiff for diabetes and "tried to educate [plaintiff] on the importance of consistently taking insulin").

Defendants are also entitled to judgment as to plaintiff's claim regarding how they responded to his claim of neck, shoulder, and back pain. Indeed, the record makes quite clear that plaintiff received a number of accommodations in response to his repeated complaints of musculoskeletal pain. During the time that plaintiff was at LCADC, he was routinely provided anti-inflammatory pain medications like ibuprofen, was given ice packs and heated compresses, and had access to a wheelchair.

This evidence flatly undermines plaintiff's many allegations that he requested and was denied medical treatment. For instance, the complaint alleges that on January 29, 2019, plaintiff took a shower and later "couldn't stand or walk." [Dkt. No. 31] at 4. Despite his symptoms, he claims, "nothing was done" id.; however, the record reflects that a non-party nurse saw plaintiff at approximately 11:30 p.m. that night, took plaintiff's pulse, and provided him with 400 milligrams of ibuprofen and a warm compress. [Dkt. No. 46-1] at 48.

The complaint next claims that, on January 30, 2019, plaintiff requested to be transported to the hospital. Although that request was denied, the complaint concedes that defendant Delateur provided plaintiff a wheelchair in response to his alleged inability to walk. [Dkt. No. 31] at 4. Moreover, the evidentiary record shows that a non-party nurse provided plaintiff an increased dosage (800 milligrams) of ibuprofen and collected a urine sample to determine if a urinary tract infection was the cause of plaintiff's discomfort. [Dkt. No. 46-1] at 21.

On February 1, 2019, plaintiff allegedly "pulled something in [his] back" and "couldn't walk again." [Dkt. No. 31] at 4. Plaintiff claims to have begged to be brought to the hospital—a request that was denied—and that he was "given no medication for the pain." Id. This claim, too, is belied by the record, which demonstrates that plaintiff was provided pain medication on two occasions on the day in question and was placed in an observation cell where he was seen sitting and sleeping without any apparent discomfort. [Dkt. No. 46-1] at 49.

In his oppositions to the Motion for Summary Judgment, plaintiff reiterates his claim that he routinely "begged" the LCADC nursing staff to transport him to the hospital for his musculoskeletal pain. [Dkt. No. 52] at 1. He additionally argues that the anti-inflammatory medications and ice packs he was given were "not treatment." [Dkt. No. 57] at 2. Plaintiff's unsworn opposition filings do not constitute evidence at summary judgment. See United States v. White, 366 F.3d 291, 300 (4th Cir. 2004) (holding that unsworn argument does not constitute evidence to be considered in opposition to summary judgment motion). Even if these new allegations could be considered at this juncture, plaintiff's assertion that his receipt of ibuprofen, ice packs, and heat packs did not constitute treatment is incorrect as a matter of law. Cf. Phillips v. Valpey, No. 8:13-cv-1959-JMC, 2014 WL 4097806, at *9 (D.S.C. Aug. 13, 2014) (finding defendants' provision of "medications, ice packs, and nowork-passes" to have constituted constitutionally sufficient line of treatment for plaintiff's complaints of knee pain). Consequently, it is clear that plaintiff's claim is based on nothing more than a disagreement over the course of treatment he received while at LCADC, a claim which does not establish a violation of plaintiff's right to medical care. See, e.g., United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011); cf. McCall v. Castillo, No. 2:15-cv-1012-TLW-MGB, 2017 WL 3972458, at *13 (D.S.C. June 14, 2017) ("Although the Plaintiff claims he should have received an MRI as well as narcotic medications for his pain, the Constitution does not guarantee a detainee the

medical treatment of his choice."). For these reasons, judgment will be entered in defendants' favor.

Finally, plaintiff's claim against defendant Anthony warrants brief discussion. As stated above, as the Health Services Administrator at LCADC Anthony was not personally responsible for treating inmates such as plaintiff. Plaintiff has not introduced any evidence showing that Anthony had responsibility for direct patient care. Accordingly, the only logical claim against Anthony is one based on her role as a supervisory official. But because there is no evidence that suggests LCADC officials violated plaintiff's rights with respect to his medical needs, there is no basis for a finding that defendant Anthony could be held liable under such a theory. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (holding that supervisory liability exists only where a supervisor was aware that his or her subordinate was acting to violate a plaintiff's rights and acted with deliberate indifference in the face of that knowledge); Evans v. Chalmers, 703 F.3d 636, 654 (4th Cir. 2012) (noting that a claim under § 1983 for supervisory liability may not succeed without a predicate constitutional violation).

## IV

For the reasons stated above, defendants' Motion for Summary Judgment will be granted in an Order that will issue alongside this Memorandum Opinion, which will enter judgment in all defendants' favor and close this civil action.

Entered this 21st day of June 2021.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge